### Grace M. Peterson v. Herbert E. Post, Jr.

[128 A2d 668]

Special Term at Rutland, November, 1956.

Present: **Jeffords, C. J., Cleary, Adams and Hulburd, JJ. and Divoll, Supr. J.**

Opinion Filed January 2, 1957.

*Ryan, Smith & Carbine* for the defendant.

*Jones, Ehrich & Clark* for the plaintiff.

**Adams, J.** The plaintiff, who was a pedestrian, brings this action to recover damages for personal injuries in which an automobile operated by the defendant was involved. Trial was by jury with a verdict and judgment for the plaintiff. The case is here on exceptions of the defendant to the denial of his motions for a verdict in his favor, to set aside the verdict and an exception to the charge of the court.

The plaintiff claims in her declaration that the defendant was negligent in that he operated his automobile at an unsafe, careless and unlawful speed under the circumstances; that he failed to stop within the distance illuminated by his headlights; failed to warn the plaintiff of his approach and operated his

automobile on the left of the center of the road and ran into the plaintiff.

The evidence discloses that the accident happened on North Branch Street in the village of Bennington on December 17, 1954, sometime between 7:30 and 8 o'clock in the evening; that it was very dark and there were no lights or cross walks on the street; that it was very cold; that the street was very icy and covered with hard packed snow, sort of glassy and very slippery.

·The defendant introduced as exhibit A a plan of the locality made to scale by a civil engineer. From his testimony, the plan and other testimony it appeared that the course of the street was generally north and south with a tarvia hard surface 18 feet wide and it was straight with a slight rise as one proceeded southerly. Olin's store was located on the westerly side of the street and the plaintiff, who was 80 years old, lived in a tenement over the store. The defendant lived on the westerly side of the street 400 to 500 feet northerly of the store. The plaintiff's mail box with two others was located on the easterly side of the street diagonally and southerly across from the store. These mail boxes were about opposite the southerly limits of a driveway to the Hutchinson house that was next southerly of the store. There was a driveway on the easterly side of the street next southerly of those mail boxes. Its northerly side was slightly over ten feet from the mail boxes. There was a stump on the westerly side of the street about opposite the southerly side of this driveway and a hydrant on the same side of the street about opposite the northerly side of this driveway. There was a wide driveway southerly from the stump leading to a junk yard and garage and a tree about equidistant from the northerly and southerly sides of the driveway and near the westerly side of the street. A neighbor of the plaintiff, a Mrs. Adams, lived on a side street that turned off the east side of North Branch Street several hundred feet south from where the plaintiff's mail box was located. The plaintiff frequently visited Mrs. Adams in the evening to watch television.

The plaintiff testified that she left home about 7:30 and crossed the street to her mail box; looked before crossing the street and saw no cars coming. She took a letter from the mail

box and then started up the street in a southerly direction on the left hand or easterly edge toward Mrs. Adams' where she was going to watch television. She didn't remember whether it was cold or warm or what the footing was like when she crossed the street. She was carrying a flashlight in her left hand and a cane in her right hand. She carried the cane because there was a dog that came out every time she went up the road. She was awfully afraid of dogs and carried the cane to ward off the dog. She didn't hear any horn and didn't remember what happened after she started southerly along the street. The next thing she remembered it was Sunday night and she was in the hospital. After starting up Branch Street on the left side she didn't remember of leaving that side. After taking her mail from the mail box she didn't remember anything until she woke up in the hospital. Immediately following that testimony in answer to two consecutive questions on re-direct examination she repeated twice, "I don't remember turning from the mail box."

The defendant testified that he left his house at ten minutes of eight and drove out of his driveway in his car which was a two door 1954 Nash sedan. He kept his car in second gear and drove southerly on the right hand or westerly side of the street all the time at a speed of 18 to 20 miles per hour with his lights on high beam. He saw the plaintiff when he was 50 to 60 feet away from her and she appeared to be walking on the left hand or easterly side of the street between the mail boxes and the driveway next southerly of them. She then suddenly veered sharply to the right and cut diagonally into the travelled portion of the highway. He blew his horn, took his foot off the accelerator, put on his brakes and tried to turn to the right. The car didn't respond because of the icy condition of the road but the brakes slowed it down slightly. The plaintiff walked into the left front fender or mud guard where it covers the front wheel. It spun her around and threw her to the left. He judged he was about two feet from the center of the road on his right side at the time of the impact. The car continued along on the right side of the street until the right front end rested against a tree just off the street. It didn't hit the tree too hard. The right front fender was pushed back, the rim of the right headlight was shaken off and the front wheels knocked out of

line. He thought the bumper was bent and so reported it but it was not.

He left the lights of the car on and he and his boy got out. The plaintiff was lying about in the center of the street and just southerly of the driveway that was on the easterly side of the street. He looked at her to see if any blood was flowing so as to apply first aid or emergency and seeing none, he stationed his boy there and went back to the store to telephone. There was no phone in the store so he had to go to the Hutchinson house. He then went back to the scene of the accident and before he left he saw the tire or skid marks of his car on the right hand of the street from a point southerly of the store to where the car was at the tree.

Mrs. Hutchinson, a neighbor of the plaintiff and her land-lady, was a witness for the plaintiff. She testified that she was in the Olin store when the defendant came in to telephone. She and Mrs. Olin went to the scene. The plaintiff was lying parallel with the street and her head southerly and her body was three feet from the easterly side of the street. She saw the defendant's car at the tree. She saw the plaintiff removed in the ambulance and the state police officer arrive. Some months later, she went to the scene with the attorney for the plaintiff and located from memory the place where she saw the plaintiff lying. She measured from that place to the tree where she saw the defendant's car and the distance was 52 feet. Likewise the distance as she measured it from the plaintiff's mail box to where she was lying was 56 feet.

Mrs. Olin testified that the plaintiff was lying on the left hand or easterly side of the street and that she would not care to pin herself down to any definite distance.

Dr. Humpheries, a witness for the plaintiff, testified that he came to the scene in response to an emergency telephone call and the ambulance was there when he arrived. The plaintiff was lying not quite in the center of the street, probably 3 feet from the center and 5 feet from the easterly edge of the travelled part. He used a flashlight to see her. She was in extreme shock and was immediately placed in the ambulance and taken to the hospital where she remained until January 31, 1955.

A member of the state police was a witness for the defend-

ant. He testified that he was on the road in his patrol car the night of December 17 and that he received notice of the accident by radio at 8:06 and arrived at the scene at 8:14. The road at the locality was icy with a layer of snow and very slippery with ice all the way across the street. He saw the car at the tree and examined it and observed its position. The right front fender and headlight were up against the tree and the back end of the car extended out into the highway at an angle. The front part of the right front fender and the headlight rim were damaged. There was also a dent on the left front fender back of the end of the headlight and along over the hub cap. There were tire marks on the right hand and westerly side of the street. They were entirely on that side of the highway and extended more or less in a straight line until near the tree and there they slid toward the tree. He made no measurement of these marks but they extended back from the car northerly to a point between the stump and hydrant on the plan, exhibit A. He marked this point with an A as an indication of this distance. The scale of the plan indicates this distance as about 80 feet. Later, but not that night, he visited the hospital to get the plaintiff's version of the accident and she stated that she couldn't remember what happened.

At the close of the plaintiff's evidence and again at the close of all the evidence the defendant made a motion for a directed verdict in his favor upon two grounds; (1) that the plaintiff had failed to prove freedom from contributory negligence and (2) failed to introduce any evidence of negligence on the part of the defendant. We take up the second ground of the motion first.

■ The burden of showing that the defendant was guilty of some negligent act or omission that proximately caused the accident was on the plaintiff. *Longchamp* v. *Conti*, 115 Vt 492, 493, 66 A2d 1.

■ We must, in considering this ground of the motion, take the evidence, as we have said many times, in the light most favorable to the plaintiff. We exclude the effect of modifying evidence. Contradictions and contradictory inferences are for the jury. The tendency of the evidence and not its weight is to

be considered. But, on the other hand, the evidence supporting the claim must be more than a scintilla. The question is not merely whether there is any evidence to this effect, but whether it is of such a quality and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof. Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise, or suspicion, is an insufficient foundation for a verdict. *Perkins* v. *Vermont Hydro-Electric Corp.*, 106 Vt 367, 399, 177 A 631, and cases cited. The form of expression used in some of our cases is there must be substantial evidence fairly and reasonably tending to support the plaintiff's claim to make a case for the jury. *Wellman, Admr.* v. *Wales*, 98 Vt 437, 447, 129 A 317; *Ready* v. *Peters*, 119 Vt 10, 11, 117 A2d 374; *State* v. *Boudreau*, 111 Vt 351, 361, 16A2d 262; *McKirryher* v. *Yager*, 112 Vt 336, 346-347, 24 A2d 331.

■ Applying the foregoing rules to the evidence that we have mentioned, it is clearly apparent that there was not substantial evidence upon which a jury acting reasonably could find the defendant negligent as claimed by the plaintiff. True, his car skidded, but that in and of itself is not evidence of negligence. *L'Ecuyer* v. *Farnsworth*, 106 Vt. 180, 182, 170 A 677; *Johnson* v. *Burke*, 108 Vt 164, 167-168, 183 A 495; *Gould* v. *Gould*, 110 Vt 324, 328, 6A2d 24. True, the plaintiff testified that when she crossed the street to reach her mail box, she looked and saw no cars coming. The defendant could well not have been in sight then. There is no evidence as to how long she was at the mail box. True, she testified that after leaving the mail box, she started along on the easterly edge of the street. But she, in about the same breath, testified that she didn't remember what happened after taking her mail from the mail box. Later she told the investigating officer the same thing. There is no direct evidence or evidence from which it can be inferred that she was struck while walking along the easterly edge of the street.

■ The plaintiff seeks to invoke the rule set forth in *Cummings* v. *Town of Cambridge*, 93 Vt 349, 353, 107A 114, that proof of the existence at a particular time of a fact of a continu-

ous nature gives rise to an inference, within reasonable limits, that it exists at a subsequent time. She claims that as the defendant says when he first saw the plaintiff she appeared to be walking along the easterly side of the road and she also said that she started along that edge, it can be inferred that she continued to walk there. She says from that it can be inferred that she was struck from behind and thus the defendant was negligent. The trouble with that is, it builds inference upon inference in order to reach the result of negligence by the defendant which is not permissible. *Gero* v. *John Hancock Life Ins. Co.*, 111 Vt 462, 480, 18 A2d 154, and cases cited.

The plaintiff claims it can fairly be inferred from the facts that the defendant was travelling faster than the 20 miles an hour as he testified. She says he saw her in time to avoid hitting her. If she was on the left edge of the road when the defendant saw her and as she claims continued there, he would have no occasion to slow down or stop to avoid hitting her. If she had continued along that edge of the street and the defendant's car hit her there from behind, she would naturally have been thrown away from the street and not into the position where she was found. Then there are the dent in the left front fender of the defendant's car and the skid and tire marks entirely upon the right hand side of the street which are physical facts, not to be ignored. The plaintiff claims that speed can be inferred from the damage to the defendant's car. The damage testified to by the state police officer and by the defendant was slight and not extensive. There is no evidence even by inference that the defendant lost control of his car because of excessive speed and struck the plaintiff from behind while she was walking along the easterly side of the street as alleged and claimed by her.

The motion for a directed verdict on the ground that there was no evidence of negligence on the part of the defendant should have been granted. It is not necessary to consider the contributory negligence ground of the motion or the motion to set aside the verdict. As there was no evidence of the defendant's negligence, it also is not necessary to consider his exception to the court's charging the last clear chance doctrine.

*Judgment reversed and judgment for the defendant to recover his costs.*