## STATE of Vermont v. Frederick KOCH

[760 A.2d 505]

No. 98-416

June 14, 2000. Defendant Frederick Koch appeals from the district court's denial of his motions for judgment of acquittal and a new trial following a jury verdict finding him guilty of grossly negligent operation of a motor vehicle. He argues that (1) the State failed to prove its case beyond a reasonable doubt, (2) the prosecutor presented an improper closing argument, and (3) the jury instructions were inadequate. We affirm.

On May 9, 1997, at around 4:00 p.m., defendant struck a pedestrian, Thomas Cataldo, with his car while driving northbound on Route 100. The accident occurred north of the Village of Stowe. Cataldo later died as a result of his injuries.

The record evidence reveals that, although the skies were overcast and there had been some drizzle, visibility was clear at the time of the accident. Defendant was

taking prescribed lithium, but there was no evidence that he was under the influence of any intoxicating substances. Defendant had been awake, however, since 4:30 a.m., and had been driving for the better part of the day prior to the accident. Defendant did not recall falling asleep before the accident.

The record evidence showed that as defendant approached the accident scene, he had an unobstructed line of sight of about 1200 feet, or 400 yards. A witness who was driving south down Route 100 just before the accident clearly observed Cataldo, who was over six feet tall and weighed about 185 pounds, from a distance estimated by the State in its opening statement to be about 216 yards.[1] The witness recalled that Cataldo was standing outside of the white fog line, facing in a southwesterly direction. There was no evidence that defendant was speeding or driving erratically. Nor was there evidence that defendant took any evasive action to avoid striking Cataldo. The police noted that there were no yaw or skid marks on the pavement or in the dirt shoulder. The medical evidence indicated that the victim was initially struck on the left side and slightly from behind, that he was thrown some distance by the impact, and died from injuries to the brain and lungs.

Defendant was charged with operating a motor vehicle in a grossly negligent manner, resulting in the death of another, in violation of 23 V.S.A. § 1091(b). A jury, which also considered the lesser-included offense of negligent operation, found him guilty of the greater charge. This appeal followed.

Defendant first argues that the State failed to present a prima facie case of gross negligence, and the evidence presented does not support such a conviction. He claims that he was entitled to either a judgment of acquittal or a new trial.

When reviewing a denial of a motion for judgment of acquittal, we must consider whether the evidence, viewed in the light most favorable to the State and excluding the modifying evidence, is sufficient to fairly and reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Brooks*, 163 Vt. 245, 254-55, 658 A.2d 22, 29 (1995).

Gross negligence is defined by statute as "conduct which involve[s] a gross deviation from the care that a reasonable person would have exercised in that situation." 23 V.S.A. § 1091(b) The Legislature adopted this language after we ruled, in *State v. Beayon*, 158 Vt. 133, 605 A.2d 527 (1992), that a previous version of § 1091, providing for prosecution of vehicular homicide, "require[d], at a minimum, a mens rea of criminal negligence." *Id.* at 136, 605 A.2d at 528. In *Beayon*, we explained that, to be found guilty of criminal negligence, the accused must have disregarded a risk of death or injury to such a degree that the failure to perceive it, given the circumstances, involved a gross deviation from the standard of care of a reasonable person. See *id.*; see also *State v. Free*, 170 Vt. 605, 606, 749 A.2d 622, 624 (2000) (mem.).

The presence or absence of gross negligence turns upon the particular factual circumstances of each case, and therefore rests within the special province of the jury. See *Rivard v. Roy*, 124 Vt. 32, 35, 196 A.2d 497, 500 (1963). Indeed, we have observed that "decided cases are of little assistance in determining the existence of gross negligence under the evidence in a particular case. Each case turns almost entirely on its own peculiar factual situation." *Langdon-Davies v. Stalbird*, 122 Vt. 56, 57, 163 A.2d 873, 874-75 (1960). Here, the evidence showed that defendant had an unobstructed view of the acci-

---

[1] The only evidence of the distance from which the witness first observed Cataldo was a photograph taken at the witness's direction indicating her location. No specific measurement of the distance was offered to the jury.

dent site for almost 400 yards, along a relatively straight stretch of road, during daylight hours, and amidst relatively light traffic. A witness just before the accident observed the victim plainly from a substantial distance. The witness was able to observe the victim's clothes and build. The same witness recalled that the victim was standing outside the regularly traveled portion of the roadway. There was no testimony as to precisely how long the victim might have been visible to defendant, although the witness, who was driving from the opposite direction, clearly placed Cataldo in a stationary position before the accident. Thus, the jury could reasonably have inferred that Cataldo was plainly visible to a driver in defendant's position for a reasonable period. Further, the jury heard evidence that the victim lived about 100 yards south of the accident site, suggesting that he had been walking away from or toward his home at the time, and saw photographs that revealed nothing in the immediate vicinity — such as a store or restaurant — to suggest his very recent arrival. In these circumstances, a jury could reasonably have concluded that defendant's failure to observe and avoid striking the victim involved a gross deviation from the standard of care of a reasonable person.[2]

Contrary to the dissent, our analysis here is not controlled by the recent decision in *Free*, in which we affirmed a trial court's dismissal of a gross negligence charge stemming from an accident in Bennington. The circumstances in *Free* were strikingly distinguishable from the case at bar. There, the evidence indicated that the defendant was focused upon oncoming traffic while attempting to turn left at a downtown intersection and failed to observe the victim, who was simultaneously attempting to cross the street. The fact that the driver had, at most, three to four seconds to observe the victim before impact was compounded by the accompanying circumstance that the driver was simultaneously "paying attention to the flow of traffic around him." *Free*, 170 Vt. at 607, 749 A.2d at 624. Here, there were no similar circumstances to distract defendant's attention, and no testimony as to the specific number of seconds that the victim was visible to the defendant.[3] As Justice Dooley, dissenting in *Free*, observed, "a driver's duty to watch the road is related to the circumstances that confront him and the place and manner of operation." *Id.* at 608, 749 A.2d at 626. The specific circumstances here, in contrast to those in *Free*, amply supported a conclusion that defendant was grossly negligent in striking the victim, even if — as the dissent suggests — he had between five and six seconds to observe him.

Next, defendant argues for a new trial, alleging that the State advanced an improper argument to the jury and that the court inadequately instructed the jury. Since defendant failed to object to either the prosecutor's closing arguments or the court's jury instructions, these issues have not been preserved for appeal, and we will not consider them. See *Imported Car Center, Inc. v. Billings*, 163 Vt. 76, 78, 653 A.2d 765, 768 (1994) (issues not ob-

---

[2]There was no direct evidence that the victim was visible to defendant for 5.4 seconds, twenty seconds, or any specific period of time. The dissent derives the 5.4-second figure by calculating, from a photograph, the witness's distance from the victim, and factoring in the speed the witness estimated she was driving. The jury did not hear or consider this figure. Rather, it considered the circumstances as a whole, including visibility, traffic pattern, and defendant's clear and extended line of sight while he was approaching the accident scene, in reasonably concluding that his failure to avoid striking the victim was gross negligence.

[3]In *Free* an accident reconstruction expert testified at the motion hearing as to the approximate amount of time involved.

jected to at trial will not be considered upon appellate review).

*Affirmed.*

**Johnson, J.,** dissenting. The decision this Court issued on December 14, 1999, upholding defendant's conviction was supported by a single fact. We stated that "the State's evidence showed that defendant had an unobstructed view of Cataldo for almost 1200 feet, or for a minimum of 20 seconds, during daylight hours." *State v. Koch,* 98-416, slip op. at 2 (Vt. Dec. 14, 1999) (mem.). Based on this fact alone, we concluded that the evidence supported defendant's conviction for grossly negligent operation of a motor vehicle. In his motion to reargue, defendant points out that the single fact upon which we relied is incorrect. The majority corrects the factual error but still holds that the evidence supports the conviction. In my view, the factual correction requires a reversal of defendant's conviction. I therefore dissent.

Contrary to our decision in December 1999, the State's evidence did not show that defendant had an unobstructed view of Cataldo for 1200 feet or for twenty seconds. Rather, the State's evidence showed that defendant had an unobstructed view of Cataldo for about 5.4 seconds. No evidence placed Cataldo at the side of the road for any longer than 5.4 seconds. So the issue is whether inattention for 5.4 seconds while traveling on a 1200-foot straightaway at five-to-ten miles per hour under the speed limit is gross negligence. Our precedent does not support the majority's conclusion that this evidence is sufficient to support a conviction for grossly negligent operation of a motor vehicle.

In its original entry order, the majority relied on *State v. Devine,* 168 Vt. 566, 719 A.2d 861 (1998). In *Devine,* the defendant drove his car across the double yellow center line and collided with the vehicle traveling in the opposite direction, killing the driver. The evidence viewed in the light most favorable to the State showed that (1) the defendant had had little opportunity for sleep during the several days before the accident, (2) he had been consuming alcohol and smoking marijuana during this period, (3) he had had trouble staying awake on the day of the accident and had fallen asleep in his car earlier in the day, (4) the road was dry and it was a clear day with good visibility, (5) the defendant was driving in excess of the speed limit, (6) he drove across the double yellow line across two lanes of oncoming traffic into the victim's car without any attempt to slow down or turn away, and (7) after the accident, *he did not realize that he had hit another car.* See *id.* at 567, 719 A.2d at 863. Based on this evidence, we upheld the conviction, relying on cases involving alcohol consumption, lack of sleep, and driving in excess of the speed limit. None of these factors is present in this case.

In this case, the evidence showed that (1) defendant was traveling below the speed limit, (2) the driver of the vehicle behind defendant did not notice defendant driving erratically or swerving, (3) nor did this driver see the victim standing at the side of the road, (4) the day was overcast and parts of the road were wet because it had been raining, (5) there was no evidence that defendant was under the influence of drugs or alcohol, and (6) defendant was aware that he had hit the victim and stopped after the accident. The only evidence to support the conviction is that defendant must have been inattentive for 5.4 seconds to have failed to observe the victim at the side of road. *Devine* is not analogous to this case.

More recently, we decided *State v. Free,* 170 Vt. 605, 749 A.2d 622 (2000) (mem.). In *Free,* we affirmed the trial court's decision dismissing the charge of grossly negligent operation of a motor vehicle because the facts could not support a finding of gross negligence. See *id.*

at 605, 749 A.2d at 623. The evidence in *Free* showed that the defendant was traveling at ten to fifteen miles per hour during daylight hours when he entered the intersection of Main Street and Morgan Street in Bennington. The defendant turned onto Morgan Street, but failed to notice a pedestrian in the well-marked crosswalk, although the accident reconstructionist testified that the pedestrian had been in the crosswalk for four to five seconds before the defendant hit him. We held that the defendant's inattention to a pedestrian for a mere three to four seconds — as he must have spent one to two seconds of the total five seconds observing the traffic flow — "indicates, at best, a mere error in judgment, loss of presence of mind, or momentary inattention." *Id.* at 608, 749 A.2d at 625. Such brief inattention, we concluded, was not sufficient to support a conviction for gross negligence. See *id.*

This case is like *Free* because the only evidence to support the conviction is inattention to a pedestrian for 5.4 seconds. Indeed, this case presents a stronger argument than *Free* because defendant's inattention to the pedestrian for 5.4 seconds was on a 1200-foot straightaway in the road, whereas, in *Free*, the defendant's inattention to the pedestrian for five seconds was in a well-marked crosswalk. "It is one thing to say that a few seconds of inattention is not gross negligence as a matter of law when a driver is proceeding along a straight, dry road during the day; it is quite another to say so, when the driver is turning across a pedestrian crosswalk." *Id.* at 608, 749 A.2d at 626 (Dooley, J., dissenting).

The majority's decision in this case is irreconcilable with *Free*. It is also contrary to the cases in other jurisdictions upon which we relied in *Free*. See, e.g., *Plummer v. State*, 702 A.2d 453, 465 (Md. Ct. Spec. App. 1997) (conviction for gross negligence reversed where evidence showed defendant was briefly inattentive, drifted onto shoulder of road and killed pedestrian); *People v. Maloof*, 678 N.Y.S.2d 175, 176 (App. Div. 1998) (reversing conviction for gross negligence where evidence showed defendant failed to see pedestrians and drifted onto shoulder of road, hitting two pedestrians and killing one of them). If five seconds of inattention to a pedestrian in a well-marked crosswalk is not gross negligence, then 5.4 seconds of inattention to a pedestrian on a 1200-foot straightaway is not gross negligence. I respectfully dissent.